# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER EARL STRUNK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-1295 (RJL) |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| COMMERCE, BUREAU OF THE ) | |
| CENSUS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter is before the Court on defendants' motions to dismiss. The Court has considered defendants' motions, plaintiff's oppositions and defendants' replies, and concludes that the complaint must be dismissed. Accordingly, defendants' motions will be granted.

### I. BACKGROUND

The Court is mindful that the complaint of a *pro se* plaintiff is liberally construed, as it is held to a less stringent standard than is applied to a formal pleading drafted by a lawyer. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Here, plaintiff sets forth in 136 sequentially numbered paragraphs both factual allegations and legal conclusions that can be summarized as follows: The defendants, acting in concert, are counting in the 2010 census persons whom plaintiff labels "tourists." Tourists are neither citizens nor permanent residents of the United States, and, according to plaintiff, they should not be counted for the purpose of apportioning Congressional representation. Because defendants improperly are counting tourists in the 2010

census, plaintiff asserts that he is disenfranchised – the strength of his vote is diluted. For example, plaintiff alleges that the number of Congressional representatives from New York will be reduced if tourists are counted, and the number of representatives from Texas and California, among other states with large tourist populations, will be increased, such that states in the Southwestern region of the United States will be able to exercise greater power in Congress to plaintiff's detriment. Further, according to plaintiff, counting tourists unconstitutionally naturalizes these persons notwithstanding provisions of federal immigration law, and brings about the ongoing theft of his property, for example, through the use of taxpayer funds to provide tourists medical care, public education, and other social services.

Plaintiff brings this action under 42 U.S.C. §§ 1983, 1985(3), and 1986, and various other statutes, alleging violations of the First, Fifth, Ninth, Tenth, Twelfth, Thirteenth, Fourteenth, Fifteenth, Seventeenth, Nineteenth, Twenty-fourth, and Twenty-sixth Amendments to the United States Constitution. *See* Compl. ¶¶ 1-2. Among other relief, plaintiff demands a declaratory judgment that tourists are not permanent residents to be counted in the 2010 Census, injunctive relief barring further census taking until such time as a questionnaire asks whether a person is a United States citizen or a permanent resident alien with a green card, and unspecified reparations for the spiritual and temporal injuries he has suffered. *See id.* at 29-30.

## II. DISCUSSION[1]

### A. Dismissal Under Rule 12(b)(1)

#### 1. Standing

All defendants move to dismiss on the ground that plaintiff lacks standing to bring a claim challenging the 2010 census. *See* Mem. of Law in Supp. of [Defs. Maryland Province of the Society of Jesus and Timothy B. Brown] [Dkt. #10-2] at 4-6; Mem. of Law in Supp. of Mot. to Dismiss the Compl. by Defs. New York Province of the Society of Jesus and Fr. Gerald Chojnacki, S.J. [Dkt. #14] at 8-9; Mem. of P. & A. in Supp. of Def. State of Texas' Mot. to Dismiss ("Texas Mem.") [Dkt. #16-2] at 4-6; Mem. of P. & A. in Supp. of Fed. Defs.' Mot. to Dismiss ("Fed. Defs.' Mem.") [Dkt. #21] at 5-7; Mem. of P. & A. in Supp. of Def. State of California's Mot. to Dismiss ("California Mem.") [Dkt. #22-1] at 5-6; Def. City of New York and Michael Bloomberg's Mem. of Law in Supp. of Mot. to Dismiss [Dkt. #25-1] at 4-6.

The Court's jurisdiction is limited to cases and controversies, U.S. CONST. art. III, § 2, and a core element of Article III's case-or-controversy requirement is that a plaintiff have standing to sue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At the outset, to establish standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Thus, a party has standing if his claims "spring from an 'injury in fact' – an invasion of a legally protected interest that is 'concrete and particularized,' 'actual or imminent' and 'fairly traceable' to the challenged act of the defendant, and likely to be redressed

---

[1] For purposes of this Memorandum Opinion, the Court presumes without deciding that it has personal jurisdiction over all defendants, and, therefore, does not address defendants' arguments for dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

by a favorable decision in the federal court." *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. at 560-61). If, at any time, the Court lacks subject matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(h).

In *Fed'n for Am. Immigration Reform v. Klutznick*, 486 F. Supp. 564 (D.D.C. 1980), a three-judge panel considered the constitutionality of the 1980 census and the plaintiffs' assertion that the 1980 census would "fail to establish the number of illegal aliens in the country, or the states and districts within which they live," resulting in "in the inclusion of a large but presently unascertainable number of illegal aliens in the population figures which form the basis for the apportionment of United States Representatives among the states, the apportionment by many states of their congressional and state officials among districts, and the distribution of federal funds for a variety of programs." *Id.* at 565. According to the plaintiffs, "the votes of persons in some states or regions [would] be diluted in comparison to those in the states and regions with a large illegal alien population, and those same persons may [have], as residents of the disadvantaged states or regions, also receive[d] a lesser share of federal monies." *Id.* at 566. The plaintiffs argued that "inclusion of illegal aliens in fact defeat[ed] the purpose of apportionment; equal representation for equal numbers of people of the United States," and they demanded "declaratory and injunctive relief, requiring the Census Bureau to use its best efforts to count illegal aliens separately and exclude them from the apportionment base." *Id.* at 567-68 (internal quotation marks omitted). The panel concluded that the plaintiffs could "do no more than speculate as to which states might gain and which might lose representation." *Id.* at 570. And, because the plaintiffs could not establish that the relief they demanded would inure to their personal benefit, their claims were dismissed for lack of standing. *Id.* at 578.

Similarly, in *Sharrow v. Brown*, 447 F.2d 94 (2d Cir. 1971), *cert. denied*, 405 U.S. 968 (1972), the plaintiff argued that Section 2 of the Fourteenth Amendment (which the Second Circuit designated "14/2") requires the Census Bureau to "compile statistics on the number of male adults in each State whose right to vote is denied or abridged, so that the House of Representatives may be properly apportioned." *Id.* at 96.[2] He claimed standing to sue on the basis of his residence in New York State, which had "lost six representatives in Congress as a direct result of the Census Bureau's failure to compile" statistics as 14/2 required. *Id.* He argued that the proper enforcement of 14/2 would have "result[ed] in an increase in the representation of New York State in the House of Representatives, and, therefore, that, derivatively, he, as a citizen of New York, [would] receive an augmented voice in congressional matters." *Id.* The Second Circuit found that the plaintiff could not "establish that the failure to enforce 14/2 has resulted in a detriment to his rights of representation in Congress[.]" *Id.* at 97.

In this case, plaintiff fares no better. He alleges that his "causes of action arise in conjunction [with] the decennial 2010 Census," Compl. ¶ 1, and that defendants' collective act of

---

[2] In relevant part, the Fourteenth Amendment states:

> Representatives shall be apportioned among the several states according to their respective numbers, counting the whole number of persons in each state, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the executive and judicial officers of a state, or the members of the legislature thereof, is denied to any of the male inhabitants of such state, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such state.

U.S. CONST. amend. XIV, § 2.

counting tourists causes him "spiritual and temporal injuries," *id.* at 1 (introductory paragraph), among which is the dilution of his vote. Plaintiff is but one citizen of New York and one voter in New York's 11th Congressional District. *See* Compl. ¶ 8. The basis for his assertion that "tourists" are to be counted in the 2010 Census is unclear, and the potential impact of their inclusion is speculative at best. His challenge to the 2010 Census raises an "abstract question[] of wide public significance," *Warth v. Seldin*, 442 U.S. 490, 500 (1975), and thus he fails to allege an injury in fact, that is, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypotentical." *Lujan v. Defenders of Wildlife*, 504 U.S. at 560.

The Court concludes that plaintiff lacks standing to challenge the counting of "tourists" in the 2010 Census, and his unsupported disagreement with defendants' arguments on standing, *see, e.g.*, Pl.'s Consolidated Resp. Aff. in Opp'n to the Mot. to Dismiss the Compl. as to the State of California and State of Texas Defs. [Dkt. # 31] ¶ 12, is not persuasive.[3] The complaint must be dismissed for lack of subject matter jurisdiction.

### 2. Immunity

Even if plaintiff were able to demonstrate standing, the federal and state defendants raise alternative grounds for dismissal under Rule 12(b)(1) which operate to deprive the Court of

---

[3] "Plaintiff's Response Declaration in Opposition to the Motion to Dismiss the Complaint by Defendants The Maryland Province of the Society of Jesus and Fr. Timothy B. Brown, S.J." and "Plaintiff's Response Affidavit in Opposition to the Motion to Dismiss the Complaint as to the City of New York and Michael Bloomberg In Esse Defendants" do not yet appear on the docket. The Court will direct the Clerk to place these items on the docket as, respectively, plaintiff's opposition to the motion to dismiss [#10] filed on behalf of Maryland Province of the Society of Jesus and Timothy B. Brown, and his opposition to Defendant City of New York and Michael Bloomberg's Motion to Dismiss [#25].

subject matter jurisdiction.

### a. Sovereign Immunity

Insofar as plaintiff brings tort claims against the federal government or its employees in their official capacities and demands monetary damages, the federal defendants argue that such claims are barred by the doctrine of sovereign immunity. *See* Fed. Defs.' Mem. at 8-10. It is settled that the United States "can only be sued insofar as it has agreed to be sued." *Epps v. United States Attorney General*, 575 F. Supp. 2d 232, 238 (D.D.C. 2008) (citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994)). The doctrine of sovereign immunity bars a suit for money damages against the federal government unless there is a specific waiver of such immunity. *See id.*; *United States v. Nordic Village*, 503 U.S. 30, 34 (1992)). The Federal Tort Claims Act ("FTCA"), *see* 28 U.S.C. §§ 1346(b), 2671, *et seq.*, is an example of such a waiver, *see, e.g., Schnitzer v. Harvey*, 389 F.3d 200, 202 (D.C. Cir. 2004) ("The FTCA effects a broad waiver of sovereign immunity from lawsuits for money damages."), but the FTCA does not assist plaintiff here. The FTCA does not waive immunity for constitutional torts such as those plaintiff alleges in his complaint. *See Clark v. Library of Congress*, 750 F.2d 89, 102-04 (D.C. Cir. 1984). Moreover, plaintiff's failure to demonstrate exhaustion of administrative remedies under the FTCA prior to filing this action deprives the Court of subject matter jurisdiction. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (affirming dismissal of an FTCA suit prematurely filed before the petitioner had exhausted his administrative remedies).

### b. Immunity Under the Eleventh Amendment

Texas and California move to dismiss on the ground that the states' Eleventh Amendment immunity bars plaintiff's claims. *See* Texas Mem. at 6-7; California Mem. at 4-5. Presumably

the same argument applies to the State of New York.

Under the Eleventh Amendment, "[t]he judicial power . . . shall not . . . extend to any suit in law or equity . . . against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Generally, the Eleventh Amendment shields a state from suit in federal court. *See Bd. of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). However, if a state consents to suit or if Congress abrogates a state's immunity, a suit may proceed notwithstanding the Eleventh Amendment's protection. *See, e.g., College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999); *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

Plaintiff's complaint fails to demonstrate or even suggest that either Texas, California and New York consent to suit, or that Congress has waived immunity. His reliance on the civil rights statutes as a basis for jurisdiction, *see* 42 U.S.C. §§ 1983, 1985 and 1986, offers no support, as these statutes do not override the states' Eleventh Amendment immunity. *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) (concluding that a state is not a "person" for purposes of § 1983); *Quern v. Jordan*, 448 U.S. at 345.

### B. Dismissal Under Rule 12(b)(6)

Even if plaintiff had demonstrated standing to challenge the 2010 Census, his complaint fails to state civil rights claims against the New York Province of the Society of Jesus, Gerald Chojnacki, S.J., the Maryland Province of the Society of Jesus, and Timothy B. Brown, S.J., under 42 U.S.C. §§ 1983, 1985(3), and 1986.

"To state a claim under [§] 1983, a plaintiff must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted

'under color of' the law of a state, territory or the District of Columbia." *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), *cert. denied*, 503 U.S. 967 (1992); *West v. Atkins*, 487 U.S. 42, 48 (1988). Assuming without deciding that plaintiff adequately alleges the violation of constitutional rights, his civil rights claim fails because the complaint does not allege that these defendants are as state actors. This pleading alone is fatal. *See Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31, 41 (D.D.C. 2007) (dismissing § 1983 claim against a nightclub absent an allegation in the complaint or evidence in his opposition to the summary judgment motion that the nightclub was acting under color of District of Columbia law). Moreover, the complaint utterly fails to allege the elements of a civil conspiracy, *see Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971), which is essential to pleading a violation of 42 U.S.C. § 1985(3). *See Atherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009). Plaintiff's failure to state a claim under § 1985 means that a claim under § 1986 cannot survive. *See Burnett v. Sharma*, 511 F. Supp. 2d 136, 145 (D.D.C. 2007) ("Because the complaint fails to state a claim under § 1985, plaintiff cannot maintain a claim under § 1986."); *Thomas v. News World Comm'cns*, 681 F. Supp. 55, 62 (D.D.C. 1988) (citations omitted) ("The language of [42 U.S.C. § 1986] establishes unambiguously that a colorable claim under § 1985 is a prerequisite to stating an adequate claim for neglect to prevent under § 1986.").

## III. CONCLUSION

Plaintiff lacks standing to challenge the 2010 Census, and his complaint therefore will be dismissed for lack of subject matter jurisdiction. Even if plaintiff were to establish standing, his claims against the federal defendants are barred by sovereign immunity, and his claims against the state defendants are barred by their Eleventh Amendment immunity. Moreover, the complaint fails to allege civil rights claims against the remaining defendants. Defendants' motions will be granted, and this civil action will be dismissed. An Order accompanies this Memorandum Opinion.

*/s/ Richard J. Leon*
RICHARD J. LEON
United States District Judge

DATE:

3/15/10